W. PERCY BADHAM III (Alabama State Bar No. 2147-D51W)
**BADHAM & BUCK, LLC**
2001 Park Place North, Suite 500
Birmingham, Alabama 35203
Telephone:    (205) 521-0036
Facsimile:    (205) 521-0037
Email:        pbadham@badhambuck.com

BARBARA E. FIGARI (California State Bar No. 251942)
**THE FIGARI LAW FIRM**
A Professional Corporation
117 East Colorado Boulevard, Suite 632
Pasadena, California 91105
Telephone:    (626) 486-2620
Facsimile:    (877) 459-3540
Email:        barbara@figarilaw.com

Attorneys for Plaintiff
MICHAEL NEELY

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL NEELY, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>THE BOEING COMPANY, a Corporation; and DOES 1-50, inclusive,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES:**<br><br>(1) VIOLATION OF SECTION 519 OF THE AIR-21 ACT;<br>(2) VIOLATION OF THE ANTI-RETALIATION WHISTLEBLOWER PROTECTIONS OF THE DODD-FRANK ACT;<br>(3) AGE DISCRIMINATION IN VIOLATION OF THE ADEA;<br>(4) RETALIATION IN VIOLATION OF TITLE VII; and<br>(5) BREACH OF CONTRACT.<br><br>**DEMAND FOR JURY TRIAL**<br>**PUNITIVE DAMAGES SOUGHT** |

PLAINTIFF MICHAEL NEELY'S COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Plaintiff alleges as follows:

## THE PARTIES

1. Plaintiff MICHAEL NEELY (hereinafter "Plaintiff" or "NEELY") was at all times relevant to this action an employee of THE BOEING COMPANY, INC. (hereinafter "Defendant" or "BOEING"). NEELY is a resident of the State of Alabama.

2. BOEING is a corporation that designs, manufactures, and sells airplanes, rotorcraft, rockets, and satellites. BOEING is one of the largest global aircraft manufacturers, and the second-largest defense contractor in the world. BOEING is a publicly traded company on the New York Stock Exchange, identified with the ticker symbol "BA."

3. BOEING is headquartered in Chicago, Illinois, and maintains its principal place of business in Los Angeles, California. Accordingly, BOEING is a citizen of the States of Illinois and California.

4. Plaintiff is ignorant of the true names and capacities of the Defendants sued herein as DOES 1 through 50, and therefore sues them by such fictitious names. Plaintiff is informed and believes and thereon alleges that said Defendants are in some manner legally responsible for the activities and damages alleged herein. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

5. Plaintiff is informed and believes and thereon alleges that at all times herein mentioned each of the Defendants were acting as the partner, agent, servant, and employee of each of the remaining Defendants, and in doing the things alleged herein was acting within the course and scope of such agency and with the knowledge of the remaining Defendants.

## JURISDICTION

6. This Court has personal jurisdiction over BOEING because its principal place of business is located in Los Angeles, California and is thus subject to general personal jurisdiction in this District.

1

7.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 because the causes of action contained herein present Federal Questions.  Jurisdiction is further proper in this Court pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship among the parties.

## VENUE

8.      Venue is proper in this District because BOEING maintains its principal place of business in the City of Los Angeles, within this District.

## GENERAL ALLEGATIONS

9.      Plaintiff incorporates by reference the factual allegations set forth in the preceding paragraphs.

10.     NEELY became employed by BOEING on May 1, 1995 as a member of the Space and Defense Business Unit.  NEELY's employment was wrongfully terminated by BOEING on March 25, 2016 following his engagement in numerous protected activities, including making complaints of age discrimination, and complaining about illegal conduct to both BOEING and numerous Federal Agencies.

11.     In November 2013, BOEING launched the development of a new aircraft, the 777x, an extended range commercial aircraft.  The first delivery of this aircraft is targeted for 2020.

12.     In January 2014, BOEING assigned NEELY to support its Commercial Business Unit on the 777x program.  In essence, NEELY was on loan to a commercial business unit of BOEING, rather than his typical placement in a defense business unit. This required NEELY to travel extensively between the Huntsville, Alabama location he typically worked in, and the Everett, Washington location where a significant amount of the project was based.  NEELY worked in this support role from January to November 2014, traveling to Washington 20-25 days at a time to work on this project.

13.     In November 2014, BOEING asked NEELY to perform limited Project Management responsibilities for the Electrical Load Management System ("ELMS") on the 777x aircraft.  BOEING's Commercial Business Unit contracted with BOEING's

2

PLAINTIFF MICHAEL NEELY'S COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Defense Business Unit and with NEELY for NEELY's support through at least January 2018 so he could perform oversight for ELMS on the 777x project.

14.    ELMS is a system on the 777x which manages and distributes the power generated by the jet engines to various electrical systems on the aircraft, and interfaces with the backup generator and convertor on the plane.  For 777x BOEING is the prime contractor and develops a set of requirements for ELMS delivered to a supplier that designs, builds, tests, qualifies, and delivers the ELMS system to BOEING to integrate onto the 777x aircraft.

15.    General Electric Aviation ("GEA") United Kingdom was selected in 2014 as the supplier to design, build, test, qualify and deliver the ELMS system to BOEING. Special Business Provisions ("SBP") between BOEING and GEA were agreed to where BOEING was responsible to deliver to GEA necessary information, data, artifacts, and equipment necessary for GEA to meet program milestone deliveries to include critical first flight and Entry Into Service ("EIS") to BOEING's customers.

16.    NEELY'S role on the 777x development was to perform limited project management task, planning and reporting status of the ELMS design requirements development.  NEELY reported to commercial business unit supervisor Tony De Genner in Everett, Washington, throughout the duration of his work on the 777x project. NEELY simultaneously continued to report to defense business unit supervisor Dane Richardson for NEELY'S typical worksite in Huntsville, Alabama.

17.    NEELY'S first assignment working on the 777x ELMS was to work with the 777x electrical engineers to derive a "one month" plan, during the time period of November 1, 2014 to December 1, 2014, to "evaluate" a set of original ELMS requirements used on the Heritage 777-300ER for use on the 777x.  During the evaluation, the electrical engineers were responsible for the technical correctness and completeness of the requirements and NEELY was to provide status and report progress. NEELY learned after the fact that the December 1, 2014 milestone to complete this effort was based upon contractual provisions in the contract between BOEING and

3
PLAINTIFF MICHAEL NEELY'S COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

GEA, and that this data was and time was a critical need for "Quality of Design Requirements" to be met per FAA regulated processes and procedures.

18.     NEELY conducted this review, and reported his findings to BOEING on December 1, 2014. NEELY discovered that BOEING had anticipated being able to use the ELMS from a prior aircraft (Heritage 777-300ER), with minimal updates and changes, for inclusion on the 777x, but that it would not be able to do so, and that the ELMS for the 777x would require significant changes.

19.     Specifically, NEELY alerted BOEING management that the ELMS development did not represent a fully validated set of requirements per FAA regulated practices ("ARP4754"). NEELY reported that other 777x systems impacting ELMS were extremely immature or incomplete, which in turn had a detrimental impact on ELMS. NEELY also reported that there were safety issues impacting the ELMS on the 777x project, again because BOEING was attempting to use the ELMS from a prior aircraft, the Heritage 777-300ER, with minimal updates. NEELY reported that this would not be possible, and that extensive changes would need to be made to the ELMS for the 777x project.

20.     In short, on December 1, 2014, NEELY reported to BOEING that the ELMS in place for the 777x project at the time did not constitute a "validated" set of requirements as mandated by both internal BOEING policies and regulations of the Federal Aviation Administration ("FAA").

21.     A "validated" Specification Control Drawing ("SCD") is one that meets the requirements set forth in Aerospace Recommended Practice ("ARP") 4754. ARP 4754A was released in December 2010, and incorporated by the FAA in Advisory Circular 20-174, published in November 2011. In publishing Advisory Circular 20-174, the FAA stated that "[T]his advisory circular (AC) recognizes the Society of Automotive Engineers (SAE) Aerospace Recommended Practice (ARP) 4754A, *Guidelines for Development of Civil Aircraft and Systems*, dated December 21, 2010, as an acceptable method for establishing a development assurance process. SAE ARP 4754A discusses

4

PLAINTIFF MICHAEL NEELY'S COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

the development of aircraft and systems taking into account the overall aircraft operating environment and functions. This includes validation of requirements and verification of the design implementation for certification and process assurance."

22.     Nevertheless, from December 1, 2014 continuing throughout the entire year of 2015, BOEING continued to authorize the release of the ELMS requirements to its supplier, General Electric Aviation Limited ("General Electric").  NEELY is informed and believes and thereon alleges that the release of these requirements to the supplier, absent proper validation, violated rules and regulations mandated by the FAA, including but not limited to Advisory Circular 20-174.

23.     After the release of these requirements to the supplier, NEELY became aware that BOEING had a contract with General Electric whereby BOEING had financial incentive to provide SCDs to General Electric by certain deadlines.  One of those deadlines was December 1, 2014.  On that day, BOEING was to provide "..a baseline of validated requirements…to include a base-lined, validated SCD.  GTR and component level requirements, applicable to ELMS 2…shall be incorporated in the new SCD such that the SCD is the sole source of requirements flowed down to the ELMS sub-system.  GE's ability to undertake and complete development of ELMS3 System is conditional upon BOEING supporting the following dependencies…" and went on to note further deliverable dates of July 15, 2015, and August 18, 2015, respectively.

24.     During NEELY's assignment to ELMS, he attended 777x System Integration and System Engineering meetings as part of a team that was developing processes and procedures for BOEING to be in compliance with Title 14 of the Code of Federal Regulations, and FAA Order No. 8110.4.

25.     Unfortunately, the development and release of these critical procedures which are required by law did not occur until four months after BOEING released the first set of ELMS requirements to its supplier, General Electric.  This introduced significant risk to the safety of design issues across the entire 777x system being developed.  It also posed severe risk not only to the December 1, 2014 non-validated and

PLAINTIFF MICHAEL NEELY'S COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

non-compliant ELMS requirements already provided to General Electric, but also all future releases BOEING authorized through 2015, as well as new procedures and processes yet to be released.  The new requirements validation process, "Reference D923W355-01 -777x System Requirements and Objectives and Specification Control Document Guidelines," was ultimately not released until March 31, 2015, four months after the ELMS requirements had already been provided to BOEING'S supplier.

26.     BOEING attempted to suppress failure to adhere to Federal rules and regulations regarding the development of ELMS for the 777x.  Specifically, BOEING released the defective ELMS requirements to falsely complete scheduling milestones in the BOEING 777x ETAC system to promote its own gain and falsely assure both its supplier and its shareholders that it was meeting project deliverables for the 777x.

27.     Indeed, in BOEING'S 2015 10-K report submitted to the Securities and Exchange Commission ("SEC"), BOEING reported that its earnings for 2015 had decreased by twenty percent (20%), due to higher spending than anticipated on the development of the 777x aircraft.  BOEING withheld from both the SEC and its shareholders that the increased spending on the 777x aircraft was a product of its failure to adhere to FAA regulations and providing requirements to suppliers that were not usable simply so it could falsely purport to have met all contractual deadlines regarding the development of the aircraft.  NEELY is informed and believes and thereon alleges that this constitutes a fraud against shareholders, in addition to non-compliance with Federal statutes and regulations.

28.     NEELY made his first complaint to BOEING on June 30, 2015, in which he reported that the company was violating numerous internal policies, and ultimately, the Federal Age Discrimination in Employment Act.  NEELY reported that his supervisor told NEELY "I can employ younger, similarly skilled personnel at a lower rate who could perform your job duties," that NEELY was "getting older and slowing down" and that "I have project engineers down the hall that can be made available to do your job."

PLAINTIFF MICHAEL NEELY'S COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

29.    NEELY complained to the company that through this conduct, BOEING was violating internal policies POL-5, PRO-4332, 784, 780, 1909, and BPI-2616, 3946. BOEING took no action in response to NEELY's complaints of age discrimination, which he ultimately reported externally to the Equal Employment Opportunity Commission ("EEOC") on August 26, 2015, in Charge Number 551-2015-01803, with notice to BOEING at that time.  These complaints remain under investigation, and have now been amended to include the fact that BOEING ultimately terminated NEELY's employment.

30.    Less than ten (10) days after BOEING received notice of NEELY's EEOC complaint, it issued him the first discipline of his career, which NEELY contends was in retaliation for his protected complaints to both BOEING and the EEOC.  Specifically, BOEING issued NEELY a written warning on September 3, 2015 for purported improper use of a company issued credit card.  NEELY refused to sign this discipline, because it was false and issued in retaliation for his protected complaints of age discrimination.

31.    Throughout 2015 NEELY witnessed management and engineers failing to follow FAA regulated policies and procedures that lead to BOEING releasing defective engineering, with significant safety issues, to GEA to design, build and deliver to BOEING. Beginning in April 2015, and continuing until the wrongful termination of NEELY's employment, BOEING ignored NEELY's warnings, and later complaints. Specifically, BOEING fraudulently concealed risk, misused the company risk system, and violated risk policies and procedures that, used properly, would have resulted in widespread knowledge and disclosure of the serious safety issues BOEING was choosing to ignore.

32.    On October 6, 2015, NEELY made an internal complaint to BOEING regarding violations of regulations promulgated by the Federal Aviation Administration. Specifically, NEELY complained that BOEING was violating Title 14 of the Code of Federal Regulations, FAA Order 8110.4C regarding "Type Certification," FAA Order 8100.15 regarding "Organization Designation Authorization Procedures" and ODA-

7

300064-NM, regarding "BCA Organization Designation Authorization Procedure Manual." These complaints were reiterated internally to BOEING on November 6 and November 7, and are all coded with internal BOEING Case Numbers of 679458, 679597, 675449 and 685256. When BOEING took absolutely no action in response to these complaints – including investigating them or correcting its numerous violations of various Federal regulations and laws – NEELY elevated these complaints to the FAA directly. On March 6, 2016, NEELY filed a complaint with the FAA, identified as Case Number EWB16588, which is currently under investigation. In this complaint, NEELY not only made the FAA aware of BOEING's numerous violations of Federal regulations and laws relating to safety concerns, NEELY also reported that he was being retaliated against for making those internal reports and "blowing the whistle" about BOEING's illegal conduct.

33.     On November 6 and 7, 2015, NEELY filed additional complaints at BOEING, and specifically stated he was being retaliated against for being a whistleblower. Days later, on November 10 2015, BOEING retaliated against NEELY once again by providing him a poor performance review – again, a first in his laudable career. The negative performance review was issued by Dane Richardson, who had been the subject of NEELY'S June 30, 2015 age discrimination complaint, and Dave Demars, Senior Manager of ELMS, as well as Tony De Genner, who, as managers, collaborated with Dane Richardson to complete NEELY's performance review and suspect in allowance of FAA violations.

34.     During internal BOEING investigative interviews, NEELY amended complaints NEELY to include allegations that he was also was being retaliated against in violation of the Sarbanes-Oxley Act. When BOEING, again, chose to ignore NEELY's complaints, and instead continue retaliating against him, without so much as an even cursory investigation, NEELY externally reported his whistleblower retaliation complaints to the Department of Labor on February 20, March 10 and March 14.

PLAINTIFF MICHAEL NEELY'S COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

BOEING terminated NEELY's employment on March 25, 2016, less than ten days after his final complaint to a Federal agency.

## FIRST CAUSE OF ACTION

## VIOLATION OF SECTION 519 OF THE WENDELL H. FORD AVIATION INVESTMENT AND REFORM ACT FOR THE 21ST CENTURY AGAINST ALL DEFENDANTS

35.    Plaintiff incorporates all preceding paragraphs by reference, as though fully stated herein.

36.    Section 519 of the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century ("AIR-21") is codified at 49 U.S.C. § 42121, *et seq.*

37.    AIR-21 prohibits any air carrier, or contractor or subcontractor of an air carrier, from discharging an employee or otherwise discriminating against an employee who has provided, to either the employer or the Federal Government, any information relating to any violation or alleged violation of any order, regulation, or standard of the FAA or any other provision of Federal law relating to air carrier safety.

38.    Plaintiff engaged in protected activity by making reports of what he reasonably believed to be illegal and fraudulent conduct to BOEING, through its agents and employees, during his employment.

39.    Plaintiff further engaged in protected activity by making external reports of what he reasonably believed to be illegal and fraudulent conduct to multiple Federal agencies, as described above.

40.    Defendant discharged Plaintiff's employment and further discriminated and retaliated against Plaintiff after he made oral and/or written complaints regarding what he reasonably believed to be illegal or unlawful conduct in violation of Federal statutes, rules and regulations.

41.    Plaintiffs is informed and believed, and thereon alleges that because of his making complaints regarding illegal conduct to Defendants, Plaintiff suffered adverse

9

employment actions, including but not limited to discipline, and ultimately, wrongful discharge from his employment.

42. Plaintiff further continues to suffer post-termination retaliation from Defendants, in the form of poor references and black-listing from the aerospace industry.

43. As a direct and proximate result of the actions of Defendants, Plaintiff has suffered and will continue to suffer pain and mental anguish and emotional distress.

44. Plaintiff has further suffered and will continue to suffer a loss of earnings and other employment benefits, whereby Plaintiff is entitled to general compensatory damages in amounts to be proven at trial.

45. Defendants' actions constituted a willful violation of the above-mentioned federal laws and regulations. As a direct result, Plaintiff has suffered and continues to suffer substantial losses related to the loss of wages and is entitled to recover costs and expenses and attorney's fees in seeking to compel Defendants to fully perform its obligations under state and/or federal law, in amounts according to proof at time of trial.

46. The conduct of Defendants described herein above was outrageous and was executed with malice, fraud and oppression, and with conscious disregard for Plaintiff's rights, and further, with the intent, design and purpose of injuring Plaintiff.

47. Defendants, through its officers, managing agents, employees and/or its supervisors, authorized, condoned and/or ratified the unlawful conduct described herein above. By reason thereof, Plaintiff is entitled to an award of punitive damages in an amount according to proof at the time of trial.

48. Defendants committed the acts alleged herein by acting knowingly and willfully, with the wrongful and illegal deliberate intention of injuring Plaintiff, from improper motives amounting to malice, and in conscious disregard of Plaintiff's rights. Plaintiff is thus entitled to recover nominal, actual, compensatory, punitive, and exemplary damages in amounts according to proof at time of trial, in addition to any other remedies and damages allowable by law.

PLAINTIFF MICHAEL NEELY'S COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

## SECOND CAUSE OF ACTION
## VIOLATION OF ANTI-RETALIATION WHISTLEBLOWER PROVISIONS OF THE DODD-FRANK ACT
## AGAINST ALL DEFENDANTS

49.    Plaintiff incorporates all preceding paragraphs by reference, as though fully stated herein.

50.    The Federal Dodd-Frank Wall Street Reform and Consumer Protection Act (Dodd-Frank) directs that "no employer may discharge, demote, suspend, threaten, harass, directly or indirectly, or in any other manner discriminate against, a whistleblower in the terms and conditions of employment because of" certain types of protected conduct. (15 U.S.C. section 78u-6(h)(1)(A)).

51.    An "employer" encompasses both entities, such as BOEING, and individuals, including RICHARDSON and DE GENNER.  Individual liability exists for violations of the Dodd-Frank anti-retaliation provisions. (*See, e.g., Wadler v. BioRad Laboratories, Inc.* 15-CV-02356-JCS (Oct. 23, 2015)).

52.    The Dodd-Frank anti-retaliation provisions apply to individuals such as Plaintiffs, who make internal company reports of conduct which violates SEC regulations, but do not contact the SEC directly. (15 U.S.C. section 78u-6(h)(1)(A)(iii); 17 C.F.R. section 240.21F-2(b)(1)).

53.    Plaintiff engaged in protected activity by making reports of what he reasonably believed to be illegal and fraudulent conduct to BOEING, through its agents and employees, during his employment.

54.    Plaintiff further engaged in protected activity by making external reports of what he reasonably believed to be illegal and fraudulent conduct to multiple Federal agencies, as described above.

55.    Defendant discharged Plaintiff's employment and further discriminated and retaliated against Plaintiff after he s made oral and/or written complaints regarding what

11

PLAINTIFF MICHAEL NEELY'S COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

he reasonably believed to be illegal or unlawful conduct in violation of Federal statutes, rules and regulations.

56.    Plaintiffs is informed and believed, and thereon alleges that because of his making complaints regarding illegal conduct to Defendants, Plaintiff suffered adverse employment actions, including but not limited to discipline, and ultimately, wrongful discharge from his employment.

57.    Plaintiff further continues to suffer post-termination retaliation from Defendants, in the form of poor references and black-listing from the aerospace industry.

58.    As a direct and proximate result of the actions of Defendants, Plaintiff has suffered and will continue to suffer pain and mental anguish and emotional distress.

59.    Plaintiff has further suffered and will continue to suffer a loss of earnings and other employment benefits, whereby Plaintiff is entitled to general compensatory damages in amounts to be proven at trial.

60.    Defendants' actions constituted a willful violation of the above-mentioned federal laws and regulations.  As a direct result, Plaintiff has suffered and continues to suffer substantial losses related to the loss of wages and is entitled to recover costs and expenses and attorney's fees in seeking to compel Defendants to fully perform its obligations under state and/or federal law, in amounts according to proof at time of trial.

61.    The conduct of Defendants described herein above was outrageous and was executed with malice, fraud and oppression, and with conscious disregard for Plaintiff's rights, and further, with the intent, design and purpose of injuring Plaintiff.

62.    Defendants, through its officers, managing agents, employees and/or its supervisors, authorized, condoned and/or ratified the unlawful conduct described herein above.  By reason thereof, Plaintiff is entitled to an award of punitive damages in an amount according to proof at the time of trial.

63.    Defendants committed the acts alleged herein by acting knowingly and willfully, with the wrongful and illegal deliberate intention of injuring Plaintiff, from improper motives amounting to malice, and in conscious disregard of Plaintiff's rights.

PLAINTIFF MICHAEL NEELY'S COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Plaintiff is thus entitled to recover nominal, actual, compensatory, punitive, and exemplary damages in amounts according to proof at time of trial, in addition to any other remedies and damages allowable by law.

64.     Plaintiff has also filed an administrative claim with the Department of Labor alleging that Defendants retaliated against him in violation of Section 806 of the Sarbanes-Oxley Act.  Plaintiff expressly reserves the right to file an amended complaint including a cause of action based upon Defendant's SOX violations when the administrative exhaustion requirements related to these claims have been met.

**THIRD CAUSE OF ACTION**

**AGE DISCRIMINATION**

**VIOLATION OF 29 U.S.C. §§ 621 *et seq.***

**AGAINST ALL DEFENDANTS**

65.     Plaintiff incorporates by reference the factual allegations set forth in the preceding paragraphs.

66.     Plaintiff was over 40 years old at the time he was terminated by Defendants.

67.     Defendants, through their agents and employees engaged in a pattern and practice of unlawful age discrimination in violation of the Age Discrimination in Employment Act ("ADEA") in connection with the termination of Plaintiff's employment and the performance standard to which Plaintiff was held.  Plaintiff was discharged because of his age.

68.     At all relevant times, Defendants had actual and constructive knowledge of the discriminatory conduct described and alleged herein, and condoned, ratified and participated in the discrimination.

69.     Plaintiff filed timely complaints against the Defendants with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging discrimination on June 30, 2015.  Plaintiff received notification of his right to sue BOEING on June 1, 2016.

13

PLAINTIFF MICHAEL NEELY'S COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

70. As a direct and proximate result of the willful, knowing, and intentional discrimination against Plaintiff, and the failure to act by Defendants, Plaintiff has suffered mental distress, anguish, and indignation. Plaintiff is thereby entitled to general and compensatory damages in an amount to be proven at trial.

71. Defendants, and each of them, did the acts alleged herein maliciously, fraudulently and oppressively, with the wrongful intent to injure Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of Plaintiff's rights. The acts complained of were known to, authorized and ratified by Defendants. Plaintiff is therefore entitled to recover punitive damages from Defendants, and each of them, in an amount according to proof at the time of trial.

72. By reason of the conduct of Defendants and each of them as alleged herein, Plaintiff has necessarily retained attorneys to prosecute the within action. Plaintiff is therefore entitled to reasonable attorney's fees and litigation expenses, including expert witness fees and costs, incurred in bringing the within action. As a result of Defendants' and each of their actions, Plaintiff sustained economic damages to be proven at trial. As a further result of Defendants' and each of their actions, Plaintiff suffered emotional distress; resulting in damages to be proven at trial.

73. The above discriminatory conduct violates the ADEA, and entitles Plaintiff to all categories of damages, including exemplary or punitive damages.

### FOURTH CAUSE OF ACTION
### RETALIATION IN VIOLATION OF TITLE VII
### AGAINST ALL DEFENDANTS

74. Plaintiff incorporates by reference the factual allegations set forth in the preceding paragraphs.

75. Title VII, codified at 42 U.S.C. § 2000e-3(a), makes it an unlawful employment practice for a person covered by the Act to discriminate against an individual "because he has opposed any practice made an unlawful employment practice

14

by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

76. NEELY engaged in protected activity by filing a complaint with the EEOC on June 30, 2015, and by complaining to BOEING internally regarding age discrimination.

77. Defendants retaliated against NEELY by issuing false discipline and negative performance reviews, and ultimately, by terminating his employment in retaliation for making complaints of age discrimination to both BOEING and to the EEOC.

78. As a direct and proximate result of the willful, knowing, and intentional discrimination against Plaintiff, and the failure to act by Defendants, Plaintiff has suffered mental distress, anguish, and indignation. Plaintiff is thereby entitled to general and compensatory damages in an amount to be proven at trial.

79. Defendants, and each of them, did the acts alleged herein maliciously, fraudulently and oppressively, with the wrongful intent to injure Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of Plaintiff's rights. The acts complained of were known to, authorized and ratified by Defendants. Plaintiff is therefore entitled to recover punitive damages from Defendants, and each of them, in an amount according to proof at the time of trial.

80. By reason of the conduct of Defendants and each of them as alleged herein, Plaintiff has necessarily retained attorneys to prosecute the within action. Plaintiff is therefore entitled to reasonable attorney's fees and litigation expenses, including expert witness fees and costs, incurred in bringing the within action. As a result of Defendants' and each of their actions, Plaintiff sustained economic damages to be proven at trial. As a further result of Defendants' and each of their actions, Plaintiff suffered emotional distress; resulting in damages to be proven at trial.

81. The above discriminatory conduct violates the ADEA, and entitles Plaintiff to all categories of damages, including exemplary or punitive damages.

PLAINTIFF MICHAEL NEELY'S COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

## FIFTH CAUSE OF ACTION
## BREACH OF CONTRACT
## AGAINST ALL DEFENDANTS

82.     Plaintiff incorporates by reference the factual allegations set forth in the preceding paragraphs.

83.     In November 2014, Plaintiff and Defendants entered into a contract whereby Plaintiff was assured work on the 777x project through at least January 2018.

84.     At all relevant times alleged herein, Plaintiff performed his obligation under the both contracts with Defendants.  Defendants breached their implied contractual commitments to Plaintiff by terminating his employment on March 25, 2016.

85.     As a direct and proximate result of Defendants' breach, Plaintiff has economic loss in an amount to be proven at the time of trial.

/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/

16

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff NEELY prays for relief as follows:

1. For general damages according to proof, however, no less than the jurisdictional limit of this court;

2. For restitution in an amount according to proof;

3. For special damages in amounts according to proof;

4. For exemplary and punitive damages in amounts according to proof;

5. For specific performance of the obligation to provide employment;

6. For reinstatement of Plaintiff's employment;

7. For injunctive relief as provided by law;

8. For declaratory relief as provided by law;

9. For interest as provided by law;

10. For cost of suit incurred herein;

11. For attorneys' fees as provided by law; and

12. For such other and further relief as the Court deems fair and just.


Dated: July 7, 2016                          **BADHAM & BUCK, LLC**
                                             **THE FIGARI LAW FIRM, APLC**

                                             */s/ Barbara E. Figari*

                                             _____
                                             W. PERCY BADHAM, III
                                             BARBARA E. FIGARI
                                             Attorneys for Plaintiff
                                             MICHAEL NEELY

17

PLAINTIFF MICHAEL NEELY'S COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

## **JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: July 7, 2016

**BADHAM & BUCK, LLC**
**THE FIGARI LAW FIRM, APLC**

*/s/ Barbara E. Figari*

_____

W. PERCY BADHAM, III
BARBARA E. FIGARI
Attorneys for Plaintiff
MICHAEL NEELY

PLAINTIFF MICHAEL NEELY'S COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL