HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICHAEL NEELY,

    Plaintiff,

v.

THE BOEING COMPANY,

    Defendant.

CASE NO. C16-1791 RAJ

ORDER

## I. INTRODUCTION

This matter comes before the Court on Defendant The Boeing Company's ("Boeing") Motion to Dismiss. Dkt. # 61. Plaintiff Michael Neely opposes the Motion. Dkt. # 63. For the reasons set forth below, the Court **GRANTS in part and DENIES in part** Defendant's Motion.

## II. BACKGROUND

The following is taken from Plaintiff's Second Amended Complaint ("SAC"), which is assumed to be true for the purposes of this motion to dismiss. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007).

Plaintiff is an aerospace engineer who began working at Boeing on May 1, 1995 as a member of the Space and Defense Business Unit. Dkt. # 57 at ¶ 8. In 2014, Boeing

assigned Plaintiff to support the Commercial Business Unit by working on the Boeing 777x aircraft Electrical Load Management System ("ELMS"). *Id*. at ¶ 11. While working on his first assignment on the 777x ELMS, Plaintiff alleges that he reported concerns related to Boeing's failure to comply with U.S. Federal Aviation Administration ("FAA") safety regulations related to the development of the ELMS. *Id*. at ¶¶ 17-20, 22, 26, 30-32. Plaintiff also alleges that from December 1, 2014 through all of 2015, Boeing continued its failure to comply with company and program policies and procedures governed by FAA regulations. *Id*. at ¶ 20. Specifically, Plaintiff alleges that he reported that there were safety issues impacting the ELMS being developed for the 777x aircraft because Boeing was attempting to use the ELMS from a prior aircraft without properly updating it. *Id*. at ¶ 17. These ELMS design requirements did not meet FAA regulations. *Id*. at ¶ 18. Boeing released these ELMS design requirements to its supplier and then falsely reported completed scheduling milestones. *Id*. at ¶ 20. Plaintiff also learned that Boeing falsified entries in its internal risk management system to prevent employees from reporting risk issues related to the development of the 777x aircraft. *Id*. at ¶ 25. In 2015, Boeing reported a twenty percent (20%) decrease in earnings in its 10-K report to the SEC due to the increased spending on the development of the 777x aircraft. *Id*. at ¶ 26. Plaintiff contends that this increased spending was due to Boeing's failure to adhere to FAA regulations and its premature release of the ELMS design requirements to its supplier, and that this information was withheld from its stockholders. *Id*.

Plaintiff alleges that he made several complaints to Boeing. The first was on June 30, 2015. *Id*. at ¶ 27. Plaintiff alleged that Boeing was violating internal policies, as well as the Age Discrimination in Employment Act, 29 U.S.C. §621, *et seq. Id*. Plaintiff then filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on August 26, 2015. *Id*. at ¶ 28. On September 3, 2015, Plaintiff was issued a written warning for improper use of a company-issued credit card. *Id*. at ¶ 29. Plaintiff made a second internal complaint to Boeing on October 6, 2015, alleging that Boeing failed to

follow internal and external FAA regulated procedures. *Id*. at ¶ 31. Plaintiff made two more complaints to Boeing on November 6, and November 7, 2015, making the same allegations. *Id*. When Boeing took no action in response to these complaints, Plaintiff filed a complaint with the FAA directly on March 6, 2016. *Id*.

Plaintiff also filed additional complaints with Boeing on November 6, and November 7, 2015, alleging that he was being retaliated against for being a whistleblower. *Id*. at ¶ 32. A few days later, Plaintiff received a negative performance review. *Id*. At some point, Boeing conducted an investigation in response to Plaintiff's complaints. *Id*. at ¶ 33. During his investigative interviews, Plaintiff was informed that his complaints were being dismissed and closed without cause. *Id*. Plaintiff later filed additional complaints with the Occupational Safety and Health Administration ("OSHA") alleging violations of Section 519 of the Wendell H. Form Aviation Investment and Reform Act for the 21st Century ("AIR 21"), 49 U.S.C. § 42121, *et seq.* and the Sarbanes-Oxley Act of 2002, 18 U.S.C. § 1514A ("SOX") on February 20, March 10, and March 14, 2016. *Id*. at ¶ 33. The complaints allege that Boeing retaliated against him because he voiced concerns about FAA violations. *Id*. Plaintiff was either laid off or terminated from his employment on March 25, 2016[1]. *Id*. at ¶ 34.

Plaintiff filed his original Complaint in the U.S. District Court of the Central District of California on July 7, 2016. Dkt. # 1. Plaintiff filed a First Amended Complaint on August 15, 2016. Dkt. # 14. On October 12, 2016, Boeing filed a motion to transfer, and the case was transferred to the Western District of Washington on November 18, 2016. Dkt. ## 24, 26. The Court granted Plaintiff leave to amend, and he filed a SAC on September 20, 2017. Dkt. ## 46, 57. Boeing now moves to dismiss Counts One, Two, Three, Six, Seven, and Ten of the SAC pursuant to Federal Rules of

---

[1] The parties disagree on whether Plaintiff was terminated or laid off from his employment at Boeing.

ORDER- 3

Civil Procedure 12(b)(1) and 12(b)(6). Boeing also moves to dismiss Plaintiff's claims for declaratory and injunctive relief. Dkt. # 61.

### III. LEGAL STANDARD

#### A. FRCP 12(b)(1)

Federal courts are tribunals of limited jurisdiction and may only hear cases authorized by the Constitution or a statutory grant. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). The burden of establishing subject-matter jurisdiction rests upon the party seeking to invoke federal jurisdiction. *Id*. Once it is determined that a federal court lacks subject-matter jurisdiction, the court has no choice but to dismiss the suit. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

A party may bring a factual challenge to subject-matter jurisdiction, and in such cases the court may consider materials beyond the complaint. *PW Arms, Inc. v. United States*, 186 F. Supp. 3d 1137, 1142 (W.D. Wash. 2016) (citing *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003); *see also McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) ("Moreover, when considering a motion to dismiss pursuant to Rule 12(b)(1) the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction.").

#### B. FRCP 12(b)(6)

Fed. R. Civ. P. 12(b)(6) permits a court to dismiss a complaint for failure to state a claim. The rule requires the court to assume the truth of the complaint's factual allegations and credit all reasonable inferences arising from those allegations. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). A court "need not accept as true conclusory allegations that are contradicted by documents referred to in the complaint." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The plaintiff must

point to factual allegations that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 (2007). If the plaintiff succeeds, the complaint avoids dismissal if there is "any set of facts consistent with the allegations in the complaint" that would entitle the plaintiff to relief. *Id*. at 563; *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

A court typically cannot consider evidence beyond the four corners of the complaint, although it may rely on a document to which the complaint refers if the document is central to the party's claims and its authenticity is not in question. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). A court may also consider evidence subject to judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

## IV. DISCUSSION

### A. Subject Matter Jurisdiction

Defendant argues that Count Two of Plaintiff's Second Amended Complaint ("SAC") should be dismissed for lack of subject matter jurisdiction. Count Two of the SAC alleges that Defendant retaliated against Plaintiff for engaging in protected activity in violation of AIR 21. Defendant argues that AIR 21 claims must proceed before the Department of Labor ("DOL"), and that decisions made by DOL are appealable to federal courts of appeal. However, the statute does not contain a mechanism to bring an AIR 21 claim in federal district court. *See* 49 U.S.C. § 42121(b). The Ninth Circuit has held that AIR 21 does not create a private right of action in federal district court, finding that "the plain language of [AIR 21] and its statutory scheme counsel against implying a right of action in federal district court." *Williams v. United Airlines, Inc.*, 500 F.3d 1019, 1024 (9th Cir. 2007). Plaintiff offers no controlling legal authority that supports his argument that this Court should ignore Ninth Circuit law because of the "unique factual circumstances" of this case. Dkt. # 63. The Court declines to do so here. Defendant's Motion to dismiss Count Two of the SAC for lack of subject matter jurisdiction is **GRANTED.**

### B. Failure to State a Claim

*1. Dodd-Frank Claim*

Count Three of the SAC alleges that Boeing retaliated against Plaintiff in violation of the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank"). Dkt. # 57. Plaintiff alleges that he engaged in protected activity by making reports of what he believed to be illegal and fraudulent conduct to Boeing and to multiple Federal agencies. Dkt. # 57 ¶¶ 74-75. Plaintiff does not allege that he reported this alleged misconduct to the Securities and Exchange Commission ("SEC"). *Id*.

Section 78u-6(h) prohibits an employer from discharging, harassing, or otherwise discriminating against a "whistleblower" "because of any lawful act done by the whistleblower" in three situations: first, "in providing information to the Commission in accordance with [§ 78u–6]," § 78u–6(h)(1)(A)(i); second, "in initiating, testifying in, or assisting in any investigation or ... action of the Commission based upon" information provided to the SEC in accordance with § 78u–6, § 78u–6(h)(1)(A)(ii); and third, "in making disclosures that are required or protected under" either Sarbanes–Oxley, the Securities Exchange Act of 1934, the criminal anti-retaliation prohibition at 18 U.S.C. § 1513(e), or "any other law, rule, or regulation subject to the jurisdiction of the Commission," § 78u–6(h)(1)(A)(iii). 15 U.S.C. § 78u-6(h).

The Supreme Court recently held that the meaning of "whistleblower" in Dodd-Frank's anti-retaliation provision is "any individual who provides . . . information relating to a violation of the securities laws to the [SEC]." *Digital Realty Tr., Inc. v. Somers*, 138 S. Ct. 767, 777, 200 L. Ed. 2d 15 (2018); 15 U.S.C. § 78u-6(a)(6). Therefore, to be eligible for protection under the provision, an individual must first provide information to the SEC. *Id*. Plaintiff does not allege that he reported any alleged misconduct to the SEC, therefore he cannot bring a claim of retaliation against Boeing under Dodd-Frank. Boeing's Motion to Dismiss Count Three of the SAC is **GRANTED.**

*2. SOX Claim*

Plaintiff also alleges that Boeing retaliated against him in violation of the Sarbanes-Oxley Act. Dkt. # 57 at ¶¶ 35-48. 18 U.S.C. § 1514A prohibits publicly-traded companies from discharging or otherwise discriminating against an employee "in the terms and conditions of employment" because the employee "provid[ed] information . . . or otherwise assist[ed] in an investigation regarding any conduct which the employee reasonably believes constitutes a violation" of certain criminal fraud statutes, any SEC rule or regulation, or "any provision of Federal law relating to fraud against shareholders." 18 U.S.C. § 1514A(a)(1). Section 1514A claims are governed by the procedures applicable to whistleblower claims brought under 49 U.S.C. § 42121(b). Pursuant to § 42121(b)(2)(B), a plaintiff is first required to establish a prima facie case of retaliation.

To establish a prima facie case of retaliation under § 1514A, the plaintiff must show that: (a) the employee engaged in protected activity or conduct; (b) the "named person knew or suspected, actually or constructively, that the employee engaged in the protected activity"; (c) the employee suffered an unfavorable personnel action; and (d) "[t]he circumstances were sufficient to raise the inference that the protected activity was a contributing factor in the unfavorable action." 29 C.F.R. § 1980.104(b)(1)(i)-(iv). If a plaintiff establishes a prima facie case, the evidentiary burden then shifts to the employer to demonstrate by clear and convincing evidence that it would have taken the same adverse employment action in the absence of the plaintiff's protected activity. 49 U.S.C. § 42121(b)(2)(B); *see also Van Asdale v. Int'l Game Tech*., 577 F.3d 989, 996 (9th Cir. 2009).

To constitute protected activity under SOX, an "employee's communications must definitively and specifically relate to [one] of the listed categories of fraud or securities violations under 18 U.S.C. [ ] § 1514A(a)(1)." *Van Asdale*, 577 F.3d at 996–97 (quoting *Platone v. FLYi, Inc*., 25 IER Cases 278, 287 (U.S. Dept. of Labor Sept. 29, 2006)). "To

trigger the protections of [SOX], an employee must also have (1) a subjective belief that the conduct being reported violated a listed law, and (2) this belief must be objectively reasonable." *Id*. at 1000. Boeing argues that Plaintiff fails to allege that he engaged in any protected activities under SOX, rather, that Plaintiff's complaints were related solely to FAA regulations and safety-related concerns. Plaintiff argues that he reasonably believed that Boeing's false reports, manipulation of the risk management system, and failure to report the reasons for increased spending on the 777x aircraft, constituted a fraud against the shareholders. Dkt. # 63. The SAC states that Plaintiff made complaints regarding Boeings alleged failure to comply with FAA regulations, but Plaintiff does not allege that he reported his belief that these actions were defrauding Boeing's shareholders to Boeing or to any other federal agency. Plaintiff alleges that he filed complaints that he was being retaliated against for being a whistleblower, but does not specifically allege that he raised any allegations of shareholder fraud prior to any alleged retaliation. Dkt. # 57 at ¶¶ 24-26, 32. As Plaintiff fails to allege that he engaged in protected activity under SOX, he fails to establish a prima facie case of retaliation. Boeing's Motion to Dismiss Count One of the SAC is **GRANTED.**

      *3. Breach of Contract Claim*

      Plaintiff alleges that the parties entered into a contract in 2014. Dkt. # 57 at ¶ 103. Plaintiff further alleges that this contract was updated in late 2015 to assure Plaintiff work on the 777x aircraft project through "at least January 2018." *Id*. Plaintiff alleges that Boeing breached this contract by terminating his employment on March 25, 2016. *Id*. at ¶ 104. Plaintiff attaches a copy of this contract as an exhibit to the SAC. *Id*. at Ex. C. However, these documents appear to be "Authorization Reports" that authorize a transfer of funds to allow "BDS Huntsville" to provide "technical and management expertise in support of 777X-9 Systems Engineering design activities," and not an employment contract. *Id*. Plaintiff makes no factual allegations supporting his contentions that these "Authorization Reports" constituted an employment contract, that Boeing had "implied

contractual commitments to Plaintiff" as a result of these "Authorization Reports," and that Defendant breached this alleged contract by terminating his employment. As Plaintiff fails to establish that there was a contract between the parties or that Defendant breached the terms of this contract, he fails to state a claim for breach of contract. A court "need not accept as true conclusory allegations that are contradicted by documents referred to in the complaint." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Therefore, Boeing's Motion to Dismiss Count Six of the SAC is **GRANTED.**

   *4. Wrongful Discharge Claim*

   Boeing argues that Plaintiff has not established that he can avail himself of Washington state law in this case because he is a resident of the State of Alabama. Dkt. # 51 at ¶ 1; Dkt. # 61 at 14. When the laws of more than one state potentially apply, a federal district court exercising supplemental jurisdiction over state claims applies choice of law rules from the forum state. *See Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1164 (9th Cir. 1996); *see also MKB Constructors v. Am. Zurich Ins. Co.*, 49 F. Supp. 3d 814, 832 (W.D. Wash. 2014). In Washington, the threshold question in a choice-of-law analysis is whether there is an actual conflict with another state's law. *Burnside v. Simpson Paper Co.*, 123 Wash.2d 93, 864 P.2d 937, 942 (Wash.1994). If such conflict exists, jurisdiction lies in the state with the most significant relationship to the action. *Id*.

   As the State of Alabama does not recognize a cause of action for wrongful discharge in violation of public policy, there exists a conflict of law, and the Court must now determine which state has the most significant relationship to this action. *See Howard v. Wolfe Broadcasting Corp.*, 611 So.2d 307 (Ala. 1992). It is clear from the facts alleged in the SAC that the entire course of conduct giving rise to this action occurred in Washington. Plaintiff worked in Washington for the majority of the relevant time period, and the majority of the events or conduct that that Plaintiff observed also

occurred in Washington. Therefore, the State of Washington has the most significant relationship to this case, and Washington law applies.

Under Washington law, to state a cause of action for wrongful discharge, the plaintiff must plead and prove that his or her termination was motivated by reasons that contravene an important mandate of public policy. *Becker v. Cmty. Health Sys., Inc.*, 184 Wash. 2d 252, 258, 359 P.3d 746, 749 (2015). "Wrongful discharge claims are generally limited to four scenarios: (1) where employees are fired for refusing to commit an illegal act; (2) where employees are fired for performing a public duty or obligation, such as serving jury duty; (3) where employees are fired for exercising a legal right or privilege, such as filing workers' compensation claims; and (4) where employees are fired in retaliation for reporting employer misconduct, i.e., whistle blowing." *Id*. (citations and quotations removed). Plaintiff alleges that his discharge was in violation of the public policies mandated in Dodd-Frank, AIR 21, SOX, the ADEA, the Washington Law Against Discrimination, and the Washington Anti-Blacklisting Statute. Dkt. # 57 at ¶ 110. Plaintiff argues that the circumstances of his termination fall within the category of wrongful discharge in retaliation of whistleblowing. While Plaintiff's federal whistleblowing claims have been dismissed, Plaintiff need not prove that he has a valid whistleblowing claim under federal law in order to state a claim for wrongful discharge, only that his termination *may* have been motivated by reasons that violate the public policy of protecting whistleblowers. *See Thompson v. St. Regis Paper Co.*, 102 Wash. 2d 219, 232, 685 P.2d 1081, 1089 (1984). The definition of "whistleblowing" under federal law is not the sole determinant of whether Plaintiff can be considered a "whistleblower" within the bounds of his wrongful discharge claim. Where, as here, the Court must credit all reasonable inferences arising from Plaintiff's allegations, his contention that his termination was motivated by his alleged whistleblowing activities is sufficient to state a claim for wrongful discharge under Washington law. Boeing's Motion to Dismiss Count Seven of the SAC is **DENIED.**

*5. Blacklisting Claim*

Plaintiff brings his blacklisting claim pursuant to RCW 49.44.010. However, this statute is a Washington state criminal statute. RCW 49.44.010 precludes willful and malicious "blacklisting" and provides criminal penalties for such conduct. Plaintiff fails to establish that RCW 49.44.010 provides for a private cause of action, instead relying on the argument that because the statute does not specifically state that a plaintiff cannot pursue a civil remedy, it must be true that the state legislature did not intend to preclude it. This argument is not persuasive. The absence of a specific prohibition in the language of the statute does not automatically guarantee that that Plaintiff may pursue this course of action. *See Cooper v. Univ. of Washington*, No. C06-1365RSL, 2007 WL 3356809, at *8 (W.D. Wash. Nov. 8, 2007).

Even if RCW 49.44.010 provided for a civil remedy, Plaintiff fails to make allegations sufficient to support his claim. Contrary to Plaintiff's assertions in his Response, Plaintiff does not allege that Boeing has communicated information related to his employment or layoff for the purpose of preventing him from obtaining employment, merely alleging that Boeing "has engaged in willful and malicious conduct to prevent him from securing a job in his field." Dkt. # 57 ¶¶ 126-130. Plaintiff makes no other factual allegations to support his claim. Boeing's Motion to Dismiss Count Ten of the SAC is **GRANTED.**

*6. Declaratory and Injunctive Relief*

Boeing argues that Plaintiff's requests declaratory and injunctive relief should be dismissed because Plaintiff lacks standing to bring such claims. In order to show standing, Plaintiffs must show that they have suffered an "injury in fact" that is "fairly traceable to the challenged action of the defendant," and that "will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (quotations, citations, and alterations omitted). Boeing argues that declaratory relief or

an injunction would not provide Plaintiff redress because he is no longer employed by Boeing, therefore his requests for this type of relief are moot.

"The basic question in determining mootness is whether there is a present controversy as to which effective relief can be granted." *Ruiz v. City of Santa Maria*, 160 F.3d 543, 548 (9th Cir. 1998). Boeing argues that Plaintiff does not have standing to request injunctive relief because he cannot show a likelihood of immediate irreparable injury. Dkt. # 61 at 17. "[A] claim for injunctive relief becomes moot once subsequent events have made clear the conduct alleged as the basis for the requested relief 'could not reasonably be expected to recur.'" *Ruiz*, 160 F.3d at 549. "A plaintiff who cannot reasonably be expected to benefit from prospective relief ordered against the defendant has no claim for an injunction." *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 864 (9th Cir. 2017); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 364–65, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011). Plaintiff argues that he has standing to request injunctive relief because "his past harm is accompanied by present adverse effects due to Boeing's continuous harmful course of conduct." Dkt. # 63. Plaintiff relies on his claims of blacklisting and breach of contract to provide support for his contention that he is suffering present adverse effects from Boeing's conduct. However, as noted above, Plaintiff makes no factual allegations supporting his contention that that Boeing is taking action to prevent him from finding further employment or to ruin his professional reputation, therefore he makes no factual allegations supporting his argument that Boeing is engaging in a "continuous harmful course of conduct."

Plaintiff makes no argument in response to Boeing's contention that he lacks standing to seek declaratory relief. "[T]he test for mootness applied to a claim for declaratory relief is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Bayer*, 861 F.3d at 867 (quotations, citations, and alterations omitted). The Ninth Circuit

has held that "a declaratory judgment merely adjudicating past violations of federal law—as opposed to continuing or future violations of federal law—is not an appropriate exercise of federal jurisdiction." *Id*. at 868. Where, as here, Plaintiff provides no details regarding the declaratory judgment sought or how it would address the legal controversy between the parties, there is no basis upon which to conclude that Plaintiff has standing to request it. *See id.* Boeing's Motion to Dismiss Plaintiff's request for declaratory and injunctive relief is **GRANTED.**

V. **CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Dismiss as to Counts One, Two, Three, Six, and Ten of the SAC, and Plaintiff's claims for declaratory and injunctive relief. Dkt. # 61. Defendant's Motion to Dismiss Count Seven of the SAC is **DENIED.**

Dated this 15th day of May, 2018.

*Richard A. Jones*
The Honorable Richard A. Jones
United States District Judge