1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

MICHAEL NEELY,

CASE NO. C16-1791-JCC

10

Plaintiff,

ORDER

11

v.

12

THE BOEING COMPANY,

13

Defendant.

14

15    This matter comes before the Court on Defendant's motion for summary judgment (Dkt.

16    No. 112). Having thoroughly considered the parties' briefing and the relevant record, the Court

17    finds oral argument unnecessary and hereby GRANTS the motion for the reasons explained

18    herein.

19    **I.    BACKGROUND**

20    Plaintiff was employed by Defendant as a Project Engineer 5 in Huntsville, Alabama.

21    (Dkt. No. 114 at 2.) In September 2014, Plaintiff began a temporary travel assignment with

22    Defendant's 777X subsystems team in Everett, Washington and worked on the Electrical Load

23    Management System ("ELMS"). (Dkt. Nos. 57 at 3, 113-1 at 4, 114 at 2.) Plaintiff primarily

24    worked in Everett in 2014 and 2015 but reported directly to two senior managers in Huntsville:

25    John Jones until January 9, 2015, and Dane Richardson from January 9 until the end of

26    Plaintiff's employment. (Dkt. No. 119 at 1–2.) Plaintiff's day-to-day work on the ELMS project

1    was overseen by two managers, Anthony De Genner and David Demars, who reported to

2    Richardson about Plaintiff's work performance. (*Id*. at 2.)

3          On March 3, 2015, Richardson met with Plaintiff for a scheduled salary review, during

4    which Plaintiff was given a salary notice based on his performance in the prior year. (Dkt. Nos.

5    113-2 at 8–9, 119 at 2.) Richardson relied on Jones's 2014 performance ratings for the salary

6    review. (Dkt. No. 113-2 at 8–9.) Plaintiff asserts that, during the salary review, Richardson made

7    several negative comments about Plaintiff's age. (Dkt. No. 140 at 7; *see* Dkt. No. 140-19) (email

8    from Plaintiff to himself with notes about the salary review).[1]

9          In May 2015, Richardson sent Plaintiff an email concerning Plaintiff's reimbursement

10    requests for meals and alcohol while traveling after Plaintiff charged $84 for alcohol on his

11    company credit card in one day and expensed a $110 meal without providing an itemized receipt.

12    (Dkt. Nos. 113-4, 119 at 3.) Defendant's Huntsville facility maintains a meal and alcohol

13    reimbursement policy that limits employees to expensing one glass of wine or one beer as part of

14    reimbursable meal costs, and requires employees to provide an itemized receipt and separate the

15    cost of alcohol from the cost of food on an expense report. (Dkt. Nos. 113-3 at 3, 119 at 2–3.) On

16    a later business trip, Plaintiff submitted receipts for four alcoholic drinks in a single meal and for

17    at least $72.91 in expenses for a hotel minibar, which violated the meal and alcohol

18    reimbursement policy. (Dkt. No. 119 at 3.) Although Richardson provided similar notifications

19    to at least three other employees during his time as a manager at the Huntsville facility, Plaintiff

20    was the only one to violate the policy a second time. (*Id*.) Defendant's human resources

21    department recommended that Richardson suspend Plaintiff for one day without pay for his

22    repeated violations of the reimbursement policy. (*Id*.) In September 2015, Richardson elected to

23    issue Plaintiff a written warning, known as a corrective action memo ("CAM"). (*Id*. at 3–4; Dkt.

24

25          [1] Richardson told Plaintiff that "I can employ younger, similarly skilled personnel at a lower rate who could perform your job duties," that Plaintiff was "getting older and slowing down," and that "I have project engineers down the hall that can be made available to do your

26    job." (Dkt. No. 57 at 9.)

No. 113-8 at 12.)

On June 30, 2015, Plaintiff submitted a complaint to Defendant's ethics department, alleging that Richardson had made negative age-related comments to Plaintiff during his salary review; he later amended it to assert that Richardson had retaliated against Plaintiff by issuing the CAM. (Dkt. Nos. 57 at 9, 113-6 at 4, 113-7, 113-8.) Defendant investigated Plaintiff's claims and concluded that Plaintiff's claims were unsubstantiated. (Dkt. Nos. 113-6 at 13, 113-8.) Plaintiff's appeal of Defendant's determination was denied. (Dkt. No. 113-6 at 13–14.)

On August 28, 2015, Plaintiff filed an age discrimination complaint with the federal Equal Employment Opportunity Commission ("EEOC"). (Dkt. Nos. 57 at 9, 140 at 13.) On June 1, 2016, the EEOC issued Plaintiff a right to sue letter that notified him that the EEOC was unable to conclude that Defendant had violated the relevant statutes and was closing its file on Plaintiff's claims. (Dkt. No. 140-36 at 2.)

On October 21, 2015, Richardson asked De Genner and Demars for feedback on Plaintiff's work performance in preparation for Plaintiff's 2015 year-end performance evaluation. (*See* Dkt. Nos. 113-16, 119 at 4.) De Genner and Demars agreed that Plaintiff's technical skills met or exceeded expectations but were critical of Plaintiff's abilities to communicate and work with others. (Dkt. No. 113-16 at 2–3.) Plaintiff had exhibited rude and abrasive behavior toward other employees and did not change his behavior after De Genner and Demars brought up the issue with him, and had previously sent other employees aggressive and demeaning emails and messages. (*See* Dkt. Nos. 113-1 at 5, 113-9–113-12, 113-14 at 2, 113-15 at 2–3, 115 at 2, 116 at 2, 117 at 2, 118 at 2.)[2] Plaintiff's interpersonal issues extended to his

---

[2] Another notable instance occurred during a staff meeting with Teresa Walker, a senior manager who supervised Plaintiff from October 2010 to April 2012 at Defendant's Huntsville facility. (Dkt. No. 120 at 1–2.) When Walker asked Plaintiff whether he had considered other options in resolving an issue, Plaintiff became agitated and screamed in Walker's face. (*Id*. at 2.) Walker thought Plaintiff was going to strike her. (*Id*. at 2.) Walker adjourned the meeting over Plaintiff's protests. (*Id*.) Plaintiff subsequently refused to meet with Walker to conduct performance evaluations. (*Id*. at 2–3.)

interactions with Defendant's suppliers for the ELMS project. (Dkt. Nos. 116 at 2, 118 at 2.) Richardson relied on De Genner and Demars's input in formulating Plaintiff's 2015 year-end performance evaluation. (Dkt. No. 119 at 5.) Plaintiff's 2015 performance evaluation reflects that he met expectations in the business goals category, but only met some or did not meet expectations in several performance values categories, including communication, customer satisfaction, and people working together. (Dkt. Nos. 113-17 at 2–6, 119 at 5.)

Also in October 2015, Demars was informed that the 777X ELMS project's budget would be reduced by approximately 20 percent beginning in March 2016, which necessitated a reduction in staffing on the project. (Dkt. No. 117 at 3.) Plaintiff's temporary assignment with the 777X ELMS project was eliminated, in part because "persistent travel" assignments, such as Plaintiff's, are more expensive than standard positions that do not involve frequent travel. (*Id.*) Plaintiff was scheduled to return to Defendant's Huntsville facility. (*Id.*) On November 10, 2015, Plaintiff was issued the 2015 performance evaluation by Richardson. (Dkt. No. 57 at 11.)

Plaintiff was scheduled to return to work at the Huntsville facility full-time, but there was insufficient work available for Project Engineer 5 employees, Plaintiff's position. (Dkt. No. 119 at 5.) Because of the work deficit, Defendant determined that it was necessary to declare a "surplus of one" for Project Engineer 5 positions, which triggered Defendant's reduction in force ("RIF") process in January 2016. (*Id.*; Dkt. No. 114 at 2.) Defendant's RIF process is a standardized process used when Defendant must eliminate a position due to either budgetary constraints or a surplus or redundancy in the workforce. (Dkt. No. 114 at 2.) During the RIF process, all affected employees are graded by their managers on a point scale based 40 percent on the employee's year-end performance management evaluation scores and 60 percent on their manager's rating of them on several core competencies. (*Id.*) During the scoring process, each affected employee's manager works with Defendant's human resources department and a Skills Captain, who is generally a management-level employee who does not directly supervise any of the affected employees. (*Id.* at 2–3.) When the affected employees' scores are computed, the

1 managers meet to finalize the rating for each employee, and the employee with the lowest

2 cumulative score is selected for layoff. (*Id*. at 2–3.)

3      The RIF process for Plaintiff's position was conducted in January 2016 and included 33

4 employees in the Project Engineer 5 classification, including Plaintiff. (*Id*. at 3.)[3] Plaintiff

5 received a score of 61 out of 100, which was the lowest out of the affected employees. (*Id*.; Dkt.

6 No. 113-18 at 4.) Plaintiff was selected for layoff and issued a 60-day notice of termination on or

7 around January 21, 2016. (Dkt. No. 114 at 4.) At least 14 other employees considered during the

8 RIF process were older than Plaintiff but were retained. (*Id*.) During the ensuing 60-day period,

9 Richardson worked with other employees of Defendant to attempt to find Plaintiff alternative

10 employment with Defendant. (Dkt. No. 119 at 6.) Plaintiff was unable to obtain a new position at

11 Defendant during the 60-day window and his employment was terminated on March 25, 2016.

12 (Dkt. No. 114 at 4.)

13      Plaintiff brings a variety of claims against Defendant, including for age discrimination

14 and retaliation in violation of state and federal law, and wrongful discharge in violation of public

15 policy. (*See* Dkt. No. 57 at 12–26.)[4] Defendant moves for summary judgment on Plaintiff's

16

17     [3] The datasheet showing the results of the RIF process includes 34 employees, but one
(who received a score of zero in the January RIF) was laid off following an earlier RIF, and was

18 scheduled to leave Defendant in February 2016. (Dkt. No. 114 at 3–4; *see* Dkt. No. 113-18 at 4.)

19     [4] Several of Plaintiff's claims were previously dismissed by the Court, are subject to a
pending motion for reconsideration, or are being litigated before the United States Department of

20 Labor. (*See* Dkt. Nos. 83, 106, 113 at 1–2.) The Court will not address these claims or their
underlying factual allegations in this order.

21     In addition, Plaintiff has raised several novel factual allegations in his opposition to
Defendant's motion for summary judgment, such as that Defendant retaliated against him by

22 altering his job duties and assigned his duties to younger employees. (*Compare* Dkt. No. 57 at 2–
12, *with* Dkt. No. 140 at 4–5, 9–10, 12, 14.) "Where new factual theories are introduced for the

23 first time in a response to a motion for summary judgment, these theories do not preclude the
entry of summary judgment." *Bodley v. Macayo Rests., LLC*, 546 F. Supp. 2d 696, 697 n.2 (D.

24 Ariz. 2008) (citing *Pickern v. Pier 1 Imports Inc.*, 457 F.3d 963, 968–69 (9th Cir. 2006)). The

25 Court's analysis of Plaintiff's claims will be limited to those factual theories that appeared in
Plaintiff's operative complaint and thus put Defendant on notice as to the factual bases of his

26 claims.

1  claims arising under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et*

2  *seq*., the Washington Law Against Discrimination ("WLAD"), Wash. Rev. Code §§ 49.60 *et*

3  *seq*., and his claim of wrongful discharge in violation of public policy. (Dkt. No. 112 at 2.)

4  **II.  DISCUSSION**

5    **A.  Summary Judgment Legal Standard**

6    "The court shall grant summary judgment if the movant shows that there is no genuine

7  dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

8  Civ. P. 56(a). In making such a determination, the Court must view the facts and justifiable

9  inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Anderson v.*

10  *Liberty Lobby*, *Inc.*, 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly

11  made and supported, the opposing party "must come forward with 'specific facts showing that

12  there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

13  574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). Material facts are those that may affect the

14  outcome of the case, and a dispute about a material fact is genuine if there is sufficient evidence

15  for a reasonable jury to return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248–49.

16    **B.  Age Discrimination Claims**

17    The ADEA and WLAD prohibit employers from discharging or otherwise discriminating

18  against an individual based on his or her age. *See* 29 U.S.C. § 623(a)(1); Wash. Rev. Code §

19  49.60.180(2). "To overcome summary judgment [on a WLAD claim], a plaintiff needs to show

20  only that a reasonable jury could find that the plaintiff's protected trait was a substantial factor

21  motivating the employer's adverse actions." *Scrivener v. Clark Coll.*, 334 P.3d 541, 545 (Wash.

22  2014). Under the ADEA, a plaintiff must establish that his or her age was the but-for cause of the

23  defendant's challenged employment action. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175–78

24  (2009).

25     *1.  Direct Evidence of Age Discrimination*

26    In opposing a motion for summary judgment on a claim for age discrimination in

1  violation of the ADEA or WLAD, a plaintiff may offer direct evidence of a discriminatory

2  motive. *France v. Johnson*, 795 F.3d 1170, 1173 (9th Cir. 2015), *as amended on reh'g* (Oct. 14,

3  2015); *Alonso v. Qwest Commc'ns Co., LLC*, 315 P.3d 610, 616 (Wash. Ct. App. 2013). Direct

4  evidence is that which establishes that the decisionmaker held a discriminatory attitude or motive

5  toward the protected class, and that the attitude or motive was a significant or substantial factor

6  in an employment decision. *France*, 795 F.3d at 1173 (citing *Enlow v. Salem-Keizer Yellow Cab

7  Co.*, 389 F.3d 802, 812 (9th Cir. 2004)); *Alonso*, 315 P.3d at 616. The direct evidence "must be

8  evidence directly tied to the adverse employment decision." *France*, 795 F.3d at 1173 (collecting

9  cases); *see Alonso*, 315 P.3d at 616 (citing *Kastanis v. Educ. Emps. Credit Union*, 859 P.2d 26,

10 30 (Wash. 1993)).

11        Plaintiff relies on Richardson's alleged age-related comments during the March 3, 2015

12 salary review as direct evidence supporting his claims of age discrimination. (*See* Dkt. Nos. 57 at

13 9; 113-6 at 4, 8–10, 15–16, 40; 113-7.) Viewing Plaintiff's evidence in the light most favorable

14 to him, two of those comments—that Richardson could employ younger people at a lower salary

15 to perform Plaintiff's job duties and that Plaintiff was "getting older and slowing down"—

16 demonstrate Richardson's discriminatory attitude or motive toward the class protected by the

17 ADEA and WLAD's prohibitions on age discrimination. (Dkt. No. 57 at 9.)

18        But Plaintiff has not demonstrated that such discriminatory attitude or motive played a

19 significant or substantial role in Defendant's termination of his employment, the adverse

20 employment action underlying Plaintiff's age discrimination claims. (*See* Dkt. No. 57 at 20–21,

21 24–25.) The reason for the January 2016 RIF process was completely unrelated to any

22 discriminatory attitude or motive by Richardson—there was an insufficient amount of work for

23 Project Engineer 5 employees. (Dkt. Nos. 114 at 2–3, 119 at 5.) And although Richardson was

24 involved in the RIF process, he was not the sole decisionmaker; as a manager of an affected

25 employee, he worked in conjunction with Defendant's human resources department and the

26 RIF's Skills Captain while formulating Plaintiff's RIF score, and met with the managers of the

other affected employees to ensure uniformity in scoring prior to finalizing the affected

employees' scores. (Dkt. Nos. 114 at 2–3; 119 at 5.) And although Richardson was tasked with

formulating Plaintiff's 2015 performance evaluation, which was considered in the RIF process,

Plaintiff has not challenged his poor interpersonal scores on the 2015 performance evaluation or

otherwise rebutted Defendant's evidence of his challenging interactions with other employees.

(*See generally* Dkt. No. 140; *see, e.g.*, Dkt. Nos. 113-9–113-12, 113-16 at 2–3, 115 at 2, 116 at 2,

117 at 2, 118 at 2, 120 at 1–3.) Therefore, although Plaintiff has submitted evidence that

establishes Richardson's discriminatory attitude or motive, he has not established that any such

discriminatory attitude or motive was a significant or substantial role in his termination

following the RIF process. *See France*, 795 F.3d at 1173; *Alonso*, 315 P.3d at 616. Therefore,

Defendant's motion for summary judgment is GRANTED as to Plaintiff's ADEA and WLAD

age discrimination claims.

### 2. *McDonnell Douglas Framework*

Plaintiff also argues that his ADEA and WLAD claims survive summary judgment under

the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792,

802–05 (1973). (*See* Dkt. No. 140 at 23.) If a plaintiff relies on circumstantial evidence as

opposed to or in addition to some direct evidence, disparate treatment claims arising under the

ADEA or WLAD are analyzed under the *McDonnell Douglas* framework. *See Palmer v. United*

*States*, 794 F.2d 534, 537 (9th Cir. 1986) (ADEA claims); *Scrivener*, 334 P.3d at 546 (WLAD

claims). The plaintiff bears the initial burden of establishing a *prima facie* case of age

discrimination. *Palmer*, 794 F.2d at 537; *Scrivener*, 334 P.3d at 546. If the plaintiff is successful,

the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the

adverse employment action. *Palmer*, 794 F.2d at 537; *Scrivener*, 334 P.3d at 546. If the

defendant establishes such a reason, the plaintiff bears the burden of establishing that the

proffered reason is pretextual. *Palmer*, 794 F.2d at 537; *Scrivener*, 334 P.3d at 546.

The plaintiff may establish a *prima facie* case of age discrimination by showing that he

"(i) was a member of the protected class, (ii) was performing his job in a satisfactory manner, (iii) was discharged, and (iv) was replaced by a substantially younger employee with equal or inferior qualifications." *Palmer*, 794 F.2d at 537 (quoting *Douglas*, 656 F.2d at 533); *see Hume v. Am. Disposal Co.*, 880 P.2d 988, 994 (Wash. 1994). If the plaintiff was discharged as part of a general reduction in the defendant's workforce, he or she "need not show that they were replaced; rather they need show 'through circumstantial, statistical, or direct evidence that the discharge occurred under circumstances giving rise to an inference of age discrimination.'" *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000) (quoting *Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1421 (9th Cir. 1990)). Such an inference may be established by showing that the defendant still required the plaintiff's skills or that others not in the protected class were treated more favorably. *Id.*

Plaintiff was 53 years old at the time he was terminated, and thus was a member of the class protected from age discrimination under the ADEA and WLAD. (*See* Dkt. No. 114 at 4); *see* 29 U.S.C. § 631(a); *Hume*, 880 P.2d at 994. And Plaintiff has established that he was discharged from his employment with Defendant. (Dkt. Nos. 114 at 4, 140 at 23); *see Palmer*, 794 F.2d at 537; *Hume*, 880 P.2d at 994. But Plaintiff has not established that he was performing his job in a satisfactory manner: the 2015 performance evaluation shows that Plaintiff only met some expectations in the performance values category, and emphasizes that Plaintiff struggled to establish cooperative relationships, provoked disagreements, and did not respect others' opinions while asserting his own. (Dkt. No. 113-17 at 5–6.) Evidence in the record demonstrates that Plaintiff's struggles with his interpersonal skills were substantial and ongoing, and extended to Defendant's suppliers as well as other employees. (*See* Dkt. Nos. 113-1 at 5, 113-9–113-12, 113-14 at 2, 113-16 at 2–3, 115 at 2, 116 at 2, 117 at 2, 118 at 2, 120 at 1–3.) Although Plaintiff has offered evidence that Defendant repeatedly recognized his strong technical skills, he has not offered evidence contravening the 2015 performance evaluation's scoring of his interpersonal skills or rebutting Defendant's evidence of his prior challenging interactions with other

employees. (*See generally* Dkt. No. 140; *see also* Dkt. No. 140-6 at 16–22.)

Plaintiff has also not satisfied the fourth element of his *prima facie* age discrimination claim. Although he asserts that Defendant replaced him with a younger and less-qualified employee following his termination, he has not offered evidence in support of this claim. (*See* Dkt. No. 140 at 23.) Nor has Plaintiff established an inference of age discrimination based on Defendant's RIF process. Defendant instituted the RIF process due to a surplus of one designation for Plaintiff's position, and Plaintiff has not shown that Defendant was lacking in capable personnel or falling behind after Plaintiff's termination. (*See* Dkt. Nos. 114 at 3–4, 140 at 23.) Similarly, Plaintiff has not shown that others outside of the protected class were treated more favorably. (*See* Dkt. Nos. 114 at 3–4, 140 at 23.) Many of the employees affected by the RIF process were also in the protected class (and in fact were older than Plaintiff) and were not fired. (*See* Dkt. No. 113-18 at 4, 6.) And as discussed above, Richardson's comments are insufficient to establish that Plaintiff's termination following the RIF process was motivated by any discriminatory attitude or motivation attributable to Richardson. (*See supra* Section II.B.1.) Thus, Plaintiff has not established the second and fourth elements of his *prima facie* case. *Palmer*, 794 F.2d at 537; *Hume*, 880 P.2d at 994.[5] Defendant's motion for summary judgment is

---

[5] The Court notes that even if Plaintiff were able to establish a *prima facie* case of age discrimination, Defendant has carried its burden of offering a legitimate, non-discriminatory reason for Plaintiff's termination—the RIF process began due to an insufficient amount of work for Project Engineer 5 employees, and Plaintiff was terminated in particular because he received the lowest composite score of the affected employees. (Dkt. No. 114 at 2–4); *see Palmer*, 794 F.2d at 537; *Scrivener*, 334 P.3d at 546; *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1211 (9th Cir. 2008). And although Plaintiff briefly argues that the RIF process itself was pretextual, he does not offer evidence beyond Richardson's age-related comments and Plaintiff's poor scores on the 2015 performance evaluation to support his contention. (*See* Dkt. No. 140 at 15, 23.) These assertions are insufficient to demonstrate that the RIF process was pretextual. And the fact that many of the affected employees were older and were retained further weighs against an inference that age discrimination motivated Plaintiff's termination or that the RIF process was a pretext for age discrimination. *See, e.g.*, *Finney v. Lockheed Martin Corp.*, 654 F. App'x 943, 946 (10th Cir. 2016) (rejecting challenge that RIF process was pretextual, stating in part that "[i]t is worth noting twelve of the other engineers considered [in the RIF's evaluation process] were the same age or older than [the plaintiff] was at the time").

1  GRANTED as to Plaintiff's age discrimination claims on this ground.

2        **C.      Retaliation Claims**

3        To prevail on a claim of retaliation arising under the ADEA or the WLAD, the plaintiff

4  bears the initial burden of establishing a *prima facie* case of retaliation. *See Richards v. City of*

5  *Seattle*, 32 F. App'x 452, 455 (9th Cir. 2002) (citing *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793,

6  796 (9th Cir. 1982)); *Lodis v. Corbis Holdings, Inc.*, 292 P.3d 779, 786 (Wash. Ct. App. 2013). If

7  the plaintiff is successful, the burden shifts to the defendant to produce evidence of a legitimate,

8  non-retaliatory reason for the adverse employment action at issue. *See Cohen*, 686 F.2d at 796;

9  *Boyd v. State, Dep't of Soc. & Health Servs.*, 349 P.3d 864, 869 (Wash. Ct. App. 2015). If the

10  defendant does so, the burden shifts back to the plaintiff to produce evidence that the defendant's

11  proffered reason was pretextual. *Cohen*, 686 F.2d at 796; *Boyd*, 349 P.3d 869.

12              1.  *Prima Facie Case*

13       To establish a *prima facie* case of retaliation in violation of the ADEA or WLAD, a

14  plaintiff must show "that he engaged in a protected activity, that he was thereafter subjected by

15  his employer to adverse employment action, and that a causal link exists between the two."

16  *Richards*, 32 F. App'x at 455 (citing *Cohen*, 686 F.2d at 796); *see Lodis*, 292 P.3d at 786. The

17  ADEA and WLAD prohibit an employer from retaliating against an employee who has asserted a

18  complaint or participated in an investigation, proceeding, or litigation for violation of the

19  statutes' provisions. 9 U.S.C. § 623(d); Wash. Rev. Code § 49.60.210. "Not every employment

20  decision amounts to an adverse employment action"; generally, the defendant's action must

21  result in worse working conditions, a reduction in pay or benefits, an increase in workload, or

22  some other detriment to the employee's employment. *Strother v. S. Cal. Permanente Med. Grp.*,

23  79 F.3d 859, 869, 869 n.12 (9th Cir. 1996) (collecting cases). "To show the requisite causal link,

24  the plaintiff must present evidence sufficient to raise the inference that her protected activity was

25  the likely reason for the adverse action." *Cohen*, 686 F.2d at 796. If a plaintiff relies on the

26  temporal proximity between engaging in protected activity and an adverse employment action,

"the temporal proximity must be 'very close.'" *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (collecting cases) (quoting *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001)); *see Wilmot v. Kaiser Aluminum & Chem. Corp.*, 821 P.2d 18, 29 (Wash. 1991).

Plaintiff filed an internal complaint with Defendant's ethics department on June 30, 2015 and an external complaint with the EEOC on August 28, 2015 for age discrimination, and thus engaged in activity protected by the ADEA and WLAD. (Dkt. Nos. 57 at 22, 25–26; 140 at 10, 13); *see* 9 U.S.C. § 623(d); Wash. Rev. Code § 49.60.210. Plaintiff alleges that Defendant took three adverse employment actions against him: issuing the CAM, giving him poor scores on the 2015 performance evaluation, and terminating his employment following the January RIF. (Dkt. No. 57 at 22, 26; *see* Dkt. No. 140 at 10–17, 19–20, 24.)

Plaintiff has not established that the CAM constituted an adverse employment action. Written warnings are generally "not adverse employment actions where they do not materially affect the terms and conditions of employment." *Sanchez v. California*, 90 F. Supp. 3d 1036, 1056 (E.D. Cal. 2015). Plaintiff has not alleged that the CAM materially affected his employment at Defendant. (*See* Dkt. Nos. 113-6 at 29–34, 140 at 13–14.) Therefore, Defendant's issuance of the CAM cannot support Plaintiff's *prima facie* case of retaliation in violation of the ADEA and WLAD.[6]

But Plaintiff's poor score on the 2015 performance evaluation likely constitutes an adverse employment action. Although Plaintiff has not pointed to any detrimental effect the 2015 performance evaluation had on his day-to-day employment, (*see* Dkt. Nos. 57 at 10–11, 140 at 15, 24), it led to Plaintiff's poor score in the RIF, and thus contributed to his eventual

---

[6] The Court notes that Defendant has also offered legitimate, non-discriminatory reason for issuing the CAM—Plaintiff's repeated violations of the food and alcohol reimbursement policy—and Plaintiff has not provided evidence establishing that issuing a CAM for his repeated violations was pretextual. (*See* Dkt. Nos. 140 at 13–14, 140-35 at 19–20); *Cohen*, 686 F.2d at 796; *Boyd*, 349 P.3d 869.

termination. (*See* Dkt. No. 114 at 2–4.) And Plaintiff's termination itself is undoubtedly an adverse employment action. *See Strother*, 79 F.3d at 869, 869 n.12. Thus, Plaintiff bears the burden of establishing a causal connection between the filing of his age discrimination complaints and either his negative 2015 performance evaluation or termination. *See Cohen*, 686 F.2d at 796); *see also Lodis*, 292 P.3d at 786.

As Plaintiff has not submitted evidence of age discrimination other than Richardson's comments during the March 3, 2015 salary review, he relies solely on that fact and the temporal proximity between the filing of his complaints and the adverse employment actions at issue to establish causation. *See Breeden*, 532 at 273; *Wilmot*, 821 P.2d at 29. Plaintiff has not established the requisite causal connection between his complaints and the January RIF process. The January RIF process did not begin until approximately seven months after Plaintiff's internal complaint to Defendant and five months after his complaint to the EEOC. (*See* Dkt. Nos. 57 at 9, 140 at 13, 114 at 2–4.) Such a delay between Plaintiff's complaints and the cited adverse employment action, absent additional evidence of a causal connection between the two, is insufficient to satisfy the causation element of Plaintiff's retaliation claim. *See Breeden*, 532 U.S. at 273 (collecting cases and noting that courts had held that three-month and four-month gaps were insufficient); *see also Kahn v. Salerno*, 951 P.2d 321, 332 (Wash. Ct. App. 1998) (citing *Wilmot*, 821 P.2d at 29)). Therefore, Plaintiff's termination cannot support his *prima facie* claim of retaliation in violation of the ADEA and WLAD.[7]

But Plaintiff has established the requisite causal connection between his complaints and the 2015 performance evaluation. Plaintiff filed his complaints in June and late August 2015, and Richardson began to formulate the 2015 performance evaluation in October 2015. (*See* Dkt. Nos. 57 at 9–11; 113-6 at 4, 8–10, 15–16, 40; 113-7; 140 at 7, 10, 15.) As the 2015 performance

---

[7] Again, the Court notes that, as discussed above, Defendant has also established a legitimate, non-retaliatory reason for Plaintiff's termination that Plaintiff has not demonstrated was pretextual. (*See supra* Section II.B.2 n.5.)

evaluation was formulated within two months of Plaintiff's filing of his later complaint and it was Plaintiff's first annual review following his complaints, the temporal proximity between the events is sufficiently close to satisfy the causation requirement of Plaintiff's *prima facie* case as to this adverse employment action. *See Clark*, 532 U.S. at 273; *Wilmot*, 821 P.2d at 29. Therefore, Plaintiff has established a *prima facie* case of retaliation in violation of the ADEA and WLAD premised on his poor score on thee 2015 performance evaluation

### 2. *Legitimate, Non-Retaliatory Reason*

Defendant bears the burden of establishing a legitimate, non-retaliatory reason for Plaintiff's poor score. *See Cohen*, 686 F.2d at 796; *Boyd*, 349 P.3d 869. Defendant has identified such a reason—Plaintiff's subpar interpersonal skills. (*See* Dkt. No. 113-17 at 5–6.) Plaintiff's 2015 performance evaluation reflects that he only met some or did not meet expectations in several performance values categories, including communication, customer satisfaction, and people working together. (Dkt. Nos. 113-17 at 2–6, 119 at 5.) Defendant has submitted supporting evidence establishing that Plaintiff's poor interpersonal skills negatively impacted his interactions with other employees as well as Defendant's suppliers. (*See* Dkt. Nos. 113-1 at 5, 113-9–113-12, 113-14 at 2, 113-16 at 2–3, 115 at 2, 116 at 2, 117 at 2, 118 at 2, 120 at 1–3.) Thus, Defendant has carried its burden of establishing a legitimate, non-retaliatory for Plaintiff's poor score on the 2015 performance evaluation.

### 3. *Pretext*

In turn, the burden shifts back to Plaintiff to produce evidence that Defendant's proffered reason was pretextual. *See Cohen*, 686 F.2d at 796; *Boyd*, 349 P.3d 869. Plaintiff has not done so. As discussed above, Plaintiff has not contradicted the 2015 performance evaluation's scoring of his interpersonal skills or rebutted Defendant's evidence supporting the 2015 performance evaluation's conclusions. (*See generally* Dkt. No. 140; *see supra* Section II.B.2.) And Plaintiff has not offered evidence demonstrating that his filing of internal and external complaints of age discrimination was the real reason motivating his poor interpersonal skills scores. (*See generally*

1   Dkt. No. 140.) Thus, Plaintiff has not carried his burden of establishing that Defendant's

2   legitimate, non-retaliatory reason for his poor score on the 2015 performance evaluation was

3   pretextual. *Cohen*, 686 F.2d at 796; *Boyd*, 349 P.3d 869. Therefore, Defendant's motion for

4   summary judgment is GRANTED as to Plaintiff's claims for retaliation in violation of the

5   ADEA or WLAD.

6         **D.      Wrongful Discharge in Violation of Public Policy**

7         As a general rule, employees in Washington work at-will, meaning they can be

8   terminated for any reason that is not unlawful. *See Rose v. Anderson Hay & Grain Co.*, 358 P.3d

9   1139, 1141 (Wash. 2015). The tort of wrongful termination in violation of public policy is a

10  narrow exception to the at-will doctrine. *See White v. State*, 929 P.2d 396, 407 (Wash. 1997).

11  "To state a cause of action [for wrongful discharge in violation of public policy], the plaintiff

12  must plead and prove that his or her termination was motivated by reasons that contravene an

13  important mandate of public policy . . . [that] is clearly legislatively or judicially recognized."

14  *Becker v. Cmty. Health Sys., Inc.*, 359 P.3d 746, 749 (Wash. 2015) (citing *Thompson v. St. Regis*

15  *Paper Co.*, 685 P.2d 1081, 1089 (Wash. 1984)). "Once established, the burden shifts to the

16  employer to plead and prove that the employee's termination was motivated by other, legitimate,

17  reasons." *Id*.

18        Defendant moves for summary judgment on Plaintiff's claim for wrongful discharge in

19  violation of the public policy against age discrimination set forth by the WLAD. (*See* Dkt. No.

20  112 at 24–25.)[8] The Washington legislature has clearly recognized the public policy against

21  "discharg[ing] . . . any person from employment because of age . . . ." *See* Wash. Rev. Code §

22  49.60.180(2). But as discussed above, Plaintiff has not offered evidence demonstrating that there

23

24        [8] Plaintiff's complaint lists a variety of statutes as bases for his wrongful discharge in
    violation of public policy claim. (*See* Dkt. No. 57 at 24.) During his deposition, Plaintiff stated
25  that he believed that his wrongful discharge in violation of public policy claim was solely
    premised on the WLAD. (Dkt. No. 113-6 at 38–39.) And Plaintiff's claims arising under other
26  statutes were previously dismissed by the Court. (*See* Dkt. No. 83.)

1   is a genuine dispute of material fact about whether he was terminated because of his age in

2   violation of the WLAD. (*See supra* Sections II.B.1–2.) Similarly, Plaintiff has not established

3   that a genuine dispute of material fact exists on the issue of whether Defendant retaliated against

4   him after he filed age discrimination complaints with Defendant's ethics department and the

5   EEOC. (*See supra* Section II.C.3.) Therefore, Plaintiff has not pled and proven that his

6   termination was motivated by age discrimination in violation of the mandate of public policy set

7   forth by the WLAD. *See Becker*, 359 P.3d at 749. Therefore, Defendant's motion for summary

8   judgment is GRANTED on Plaintiff's claim for wrongful discharge in violation of public policy

9   premised on the WLAD.

## III.    CONCLUSION

11          For the foregoing reasons, Defendant's motion for summary judgment (Dkt. No. 112) is

12  GRANTED. Plaintiff's claims for age discrimination in violation of the ADEA (Count 4),

13  retaliation in violation of the ADEA (Count 5), wrongful discharge in violation of public policy

14  premised on the WLAD (Count 7), age discrimination in violation of the WLAD (Count 8), and

15  retaliation in violation of the WLAD (Count 9) are DISMISSED with prejudice.

16          DATED this 20th day of May 2019.

John C. Coughenour
UNITED STATES DISTRICT JUDGE